UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dr. Muhammed Nafees Qamar,<br><br>*Plaintiff*,<br><br>v.<br><br>Board of Trustees of Governors State University, *et al.*,<br><br>*Defendants*. | No. 24 CV 13245<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Muhammed Nafees Qamar sued his former employer, the Board of Trustees of Governors State University, along with Dr. Catherine Balthazar, Dr. Ning Lu, Dr. Cheryl Green, and Dr. Beverly Schneller (collectively "Defendants") for national origin discrimination, retaliation, and creation of a hostile work environment all under the Civil Rights Act of 1964 (Title VII) and for breach of contract. [Dkt. 4.] Defendants moved to dismiss parts of Qamar's complaint. [Dkt. 13.] For the reasons stated below, Defendants' motion to dismiss is granted.

### I. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. The Court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up).

### II. Background[1]

Qamar was employed by Governors State University ("GSU") from July 2018 until August 2023 as an assistant professor of Health Informatics. [Dkt. 4 ¶ 1.] He is

---

[1] The following factual allegations are taken from Qamar's Complaint [dkt. 4] and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

of Pakastani origin. [*Id.* ¶ 6.] While at GSU, Qamar was a tenure-track assistant professor with additional administrative responsibilities. [*Id.*]

During Qamar's employment, Defendant Balthazar and Defendant Lu were both Deans of GSU's College of Health and Human Services. [*Id.* ¶¶ 9–10.] Defendant Lu was also the Chair of the Department of Health Administration. [*Id.* ¶ 18.] Defendant Schneller was the Provost and Vice President for Academic affairs. [*Id.* ¶ 11.] Defendant Green was the President of GSU. [*Id.* ¶ 19.] All were Qamar's supervisors. [*Id.* ¶ 12.]

Qamar alleges that he suffered persistent discrimination, retaliation and harassment by GSU administrators throughout his employment at the University. [*Id.* ¶ 2.] At some point[2] Qamar's request to pursue outside employment, pursuant to the collective bargaining agreement with the University, was denied. [*Id.* ¶ 21.] Qamar filed a complaint with the Provost on that basis. [*Id.*] Soon after, he was removed from his position as chair of the selection committee for the Department of Health Administration and Informatics. [*Id.* ¶¶ 21, 28] Two weeks after filing his complaint, GSU and its administrators created a hostile work environment by sending Qamar an exorbitant number of emails at odd hours over a 10-day period— over 140 emails in total. [*Id.* ¶ 22.]

He also suffered a "systemic reduction in credit hours for students which translated into [a] direct reduction in Dr. Qamar's compensation." [*Id.* ¶ 21.] Defendants required Qamar to work during the University's summer session without additional compensation, which also resulted in a reduction in his income. [*Id.*] In addition, GSU's administration blocked Qamar's access to a "Learning Management System" which obstructed his ability to fulfill professional obligations and access course content he developed. [*Id.*] Finally, Qamar alleges that GSU permitted other instructors to use Qamar's course materials without his authorization. [*Id.*]

GSU's HR eventually responded to Qamar's complaint. [*Id.* ¶ 23.] It found that denying Qamar the ability to engage in outside employment violated the collective bargaining agreement. [*Id.*] Despite being notified, the Provost and President failed to intervene with respect to Qamar. [*Id.*] Qamar subsequently filed a charge with the EEOC and received a right to sue letter. [*Id.* ¶ 24.]

### III. Analysis

#### A. Title VII Claims against the Individual Defendants

Qamar asserted Title VII claims for national origin discrimination, retaliation, and hostile work environment against both GSU and the individual defendants. [*Id.*

---

[2] His EEOC charge says approximately January 2023 [dkt. 15 at 2] and his opposition brief says "December 19," 2022 [dkt. 22 at 2, 11.]

(Counts I, II, III).][3] Title VII makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race … or national origin." 42 U.S.C. § 2000e-2(a).

Defendants move to dismiss the Title VII claims against the individual defendants because Qamar failed to allege that they were his "employer" for purposes of the statute. [Dkt. 14 at 4, 7–8 n.4.] In his complaint, Qamar alleges that GSU was his employer but the individual defendants "had supervisory authority over [his] employment." [Dkt. 1 ¶¶ 1, 12.]

Simply put, "[s]upervisors do not qualify as employers under Title VII." *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 n.4 (7th Cir. 2023) (collecting cases); *Williams v. Banning*, 72 F.3d 552, 552 (7th Cir. 1995) ("Title VII does not impose 'employer' liability on a supervisor in his individual capacity for acts which violate the statute."). Qamar alleges that GSU was his employer. [Dkt. 4 ¶ 1.] Consequently, he has failed to state a Title VII claim against the individual defendants.[4]

### B. Scope of the EEOC Charge

Defendants argue that Qamar is limited in this lawsuit to claims and allegations presented to the EEOC in his charge of discrimination. [Dkt. 14 at 6.] They contend that Qamar's EEOC charge (which they attach to their motion to dismiss)[5] only alleges that he was denied the opportunity to engage in outside employment while his non-Asian counterparts were not. [*Id.* at 7; dkt. 15.] On that basis, Defendants argue that Qamar should not be allowed to bring a Title VII discrimination claim related to (1) the reduction of his income (through credit hour reductions and mandatory summer sessions), (2) the obstruction of his access to GSU's learning management system, and (3) GSU permitting other instructors to use his course materials. [Dkt. 14 at 7.] Relatedly, Defendants argue that Qamar should

---

[3] Qamar's opposition brief references relief under § 1981 and § 1983. However, he did not allege violation of those statutes in his complaint. [Dkt. 22 at 12–13.] Consequently, the Court cannot consider those allegations. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

[4] Defendants separately argue that Qamar failed to exhaust his administrative remedies with respect to Title VII claims against the individual defendants because he did not include them in his EEOC charge. [Dkt. 14 at 5.] Because the Court dismisses the Title VII claims with respect to the individual defendants on a separate basis, it does not consider this argument.

[5] Because the EEOC charge is central to and referred to in Qamar's complaint, the Court may consider it in resolving Defendants' motion. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017).

not be able to bring a Title VII hostile work environment claim (Count III) at all, because it was not included in his EEOC charge. [*Id.* at 7–8.]

The answer, in both instances, depends on whether the claims and supporting allegations are reasonably related to those Qamar included in his EEOC charge. "[A] plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citations and internal quotation marks omitted). Claims are "like or reasonably related when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

"An aggrieved employee may not complain to the EEOC of only certain instances of discrimination and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Permitting employees to do so would deprive the employer of a warning about the offending conduct and the "opportunity to attempt conciliation without resort to the courts." *Id.* With that framework in mind, the Court turns to each of Qamar's claims.

### a. National Origin Discrimination Claim

The first question is whether Qamar exhausted his administrative remedies by presenting his national origin discrimination claim to the EEOC.[6]

In his EEOC charge, Qamar included a short, two paragraph narrative describing the discrimination. [Dkt. 15 at 2.] He indicated he'd be subjected to discrimination based on national origin and to retaliation. [*Id.*] He went on to explain that he "was denied outside employment whereas [his] non-Asian counterparts were not. Subsequently, [he] complained and was then subjected to micromanagement and removed from a committee." [*Id.*] Qamar then claimed that he had been discriminated against "because of his race, Asian and retaliated against for engaging in protected activity in violation of Title VII." [*Id.*]

In his complaint, Qamar seeks redress for national origin discrimination both because he was allegedly denied outside employment and on three additional bases: (1) the reduction of his income (through credit hour reductions and mandatory summer sessions), (2) the obstruction of his access to GSU's learning management

---

[6] In opposing Defendants' motion to dismiss, Qamar argues that he can bring both race and national origin discrimination claims. [Dkt. 22 at 4.] Even if Qamar *could* bring both claims based on his EEOC charge, Qamar's complaint does not complain of race discrimination. [*See generally* dkt. 4.]

4

system, and (3) GSU permitting other instructors to use his course materials. [Dkt. 14 at 7.]

In *Rush* the Seventh Circuit addressed a somewhat similar circumstance where the EEOC "charge was rather brief and very general" but the lawsuit included much broader claims of discrimination. 966 F.2d at 1110. The court concluded that "the filing of a general charge with the EEOC [could not] open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Id.* Allowing such a practice would, in the Seventh Circuit's view, frustrate "the goals behind the requirement of prior resort to administrative relief." *Id.*

Another useful point of comparison is *Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 501 (7th Cir. 1994). There, the plaintiff complained of sex discrimination in her EEOC charge, explaining that she—but not her male counterparts—was intimidated by her manager and forced to pay for her client's insurance premiums. *Id.* at 500. In her subsequently filed complaint, she alleged sex discrimination but claimed it was because her employer transferred her a less lucrative position. *Id.* at 501. The Seventh Circuit held that her claims were not reasonably related to the allegations in her EEOC charge: "a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination." *Id.* Because there was no "factual relationship" between the claims pressed in the complaint and those in the EEOC charge, the plaintiff was prohibited from bringing her newly developed theory. *Id.*

While the Seventh Circuit emphasized the need for courts to read EEOC charges liberally, "the charges and complaint must *at minimum*, describe the same conduct." *Chaidez*, 937 F.3d at 1005 (citation and internal quotation marks omitted). Qamar's three new allegations do not bear a sufficient relationship to his original allegation about being denied outside employment. They are "not foreseeable from the allegations [Qamar] made in the charge" before the EEOC. *Miller v. Am. Airlines*, Inc., 525 F.3d 520, 526 (7th Cir. 2008).

His charge of discrimination with the EEOC also referred to being "subjected to micromanagement and removed from a committee." [Dkt. 15 at 2.] But those allegations do not bear any factual relationship to Qamar's new claims either. While they may "implicate the same individuals," they do not "involve the same conduct." *Id.* Therefore, following the *Cheek* decision, Qamar cannot sue for national origin discrimination on an entirely different basis than he included in his EEOC charge.

### b. Hostile Work Environment Claim

The second question is whether Qamar administratively exhausted his hostile work environment cause of action by including it in his EEOC charge. Defendants

argue that Qamar's references to micromanagement and being removed from a committee in his EEOC charge cannot support the hostile work environment claim in Qamar's lawsuit.[7]

On this issue, the *Brindley v. Target Corporation*, 761 F. Supp. 2d 801 (N.D. Ill. 2011), case is instructive. Brindley alleged in her EEOC charge that she had been discriminated and retaliated against on account of her age. *Id.* Specifically she alleged that "[d]uring [her] employment [she was] … subjected to different terms and conditions of employment, including, but not limited to, training opportunities, mentors, and wages." *Id.* at 807. The court concluded that Brindley could proceed with the hostile work environment claim in her complaint because it bore "a strong factual relationship to the allegations made in her charge." *Id.* It explained that it was "likely that in investigating those assertions [the] EEOC would have come to understand that the claimed continual deprivations could equate to a hostile work environment claim." *Id.*

Qamar's situation is similar. He alleged that he suffered micromanagement and removal from a committee. Those types of allegations can underpin a hostile work environment claim. To make that type of claim "the plaintiff must show that they were subject to unwelcome harassment, that the harassment was based on a protected characteristic, that the harassment was severe or pervasive and created a 'hostile or abusive situation,' and that there is a basis for employer liability." *Dodgen v. AARP*, 2022 WL 4607926, at *4 (N.D. Ill. Sept. 30, 2022). Qamar alleged that the micromanagement and removal from a committee occurred close in time with when he complained about GSU's decision to refuse him outside employment because of his national origin.

As the Seventh Circuit emphasized, the EEOC charge just needs to describe the same conduct and implicate the same individuals as the complaint. *Chaidez*, 937 F.3d at 1004; *Miller*, 525 F.3d at 525 (emphasizing need to "apply a liberal standard in determining if new claims are reasonably related"). Although Qamar's EEOC charge did not go into detail concerning the extent of the micromanagement he faced, it put Defendants on notice. Put another way, Qamar's hostile work environment claim "reasonably could be expected to grow out of an EEOC investigation of [his]

---

[7] Qamar argues that "courts have recognized that a claim of retaliation can inherently encompass a hostile work environment, especially when retaliatory conduct creates ongoing intimidation, humiliation, or interference with work performance." [Dkt. 22 at 4.] For that principal Qamar cites a case, *Gunn v. McKinney*, 259 F.3d 824, 829 (7th Cir. 2001), which neither defense counsel nor the Court has been able to locate. The Court reminds Qamar that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, and sanctions may result from such conduct, especially if the citation to *Gunn* was not merely a typographical or citation error but instead referred to a non-existent case. By presenting a pleading, written motion, or other paper to the Court, an unrepresented party acknowledges they will be held responsible for its contents. *See* Fed. R. Civ. P. 11(b).

charge." *Id.* Therefore, his hostile work environment claim is within the scope of his EEOC charge.

## C. Failure to State a Claim—Hostile Work Environment

While Qamar administratively exhausted his hostile work environment claim, to survive Defendants' motion to dismiss, Qamar's complaint must state a plausible claim on which relief may be granted.

As previewed, to bring this cause of action, the plaintiff must allege that they were harassed based on a protected characteristic, the harassment was severe or pervasive, it created a "hostile or abusive situation," and the employer could be liable. *Dodgen*, 2022 WL 4607926, at *4. "[C]ourts consider the totality of the circumstance" when determining whether the plaintiff has pled severe or pervasive conduct. *Id.* Relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation and internal quotation marks omitted).

At the motion to dismiss stage, it is premature to conclude "just how abusive" the work environment was; but the plaintiff must allege enough to show it "could plausibly be abusive." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). For example, in *Huri*, a national origin and religious discrimination case, the Seventh Circuit concluded the plaintiff's allegations of a hostile work environment were sufficient where she alleged that she was subjected to "screaming, prayer circles, social shunning, implicit criticism of non-Christians, and uniquely bad treatment." *Id.* In the national origin discrimination context, courts have found allegations sufficient where supervisors repeatedly criticized the plaintiff's English skills, berated her in front of other employees, required the plaintiff's questions be written in English, and screamed at the plaintiff for mistakes other employees also made. *Chillmon v. Vill. of Evergreen Park Illinois*, 692 F. Supp. 3d 834, 847 (N.D. Ill. 2023).

In his complaint, Qamar alleges that "GSU created a hostile work environment … by treating him differently from other employees because of his national origin from Pakistan." [Dkt. 1, ¶ 30.] Specifically, GSU (1) sent Qamar over 140 emails at odd hours over a ten-day period; (2) removed him as search committee chair; and (3) denied him the opportunity for outside employment. [Dkt. 4 ¶¶ 2–3.][8]

While Qamar alleges this is severe or pervasive conduct, the test has both subjective and objective components. *Little*, 2019 WL 1505408, at *4. Looking at the relevant factors, Qamar does not allege any of the conduct was threatening; he does

---

[8] Qamar's other allegations, discussed above, cannot be considered because they are not reasonably related to the allegations in the EEOC charge.

not allege that it was humiliating;[9] other than the emails, Qamar does not allege any conduct that was pervasive or occurred over a long period of time. For example, while removal from the chair position supports Qamar's other Title VII claims, such as his retaliation claim (Claim II), it does not support a hostile work environment claim. The same goes for Qamar's claim that he was denied the opportunity to engage in outside work. This single occurrence does not allow for the plausible inference that Qamar suffered from a hostile work environment. Single occurrences may support a hostile work environment claim, but only where they are severe. *Moses v. Sloan Valve Co.*, 2017 WL 3838040, at *2 (N.D. Ill. Sept. 1, 2017). From an objective standpoint, and given the lack of detail in Qamar's complaint, removal from his chair position and denial of the opportunity to engage in outside work are not sufficiently severe to support a hostile work environment claim.

Turning to Qamar's allegation about emails, receiving over 140 emails over a ten-day period—or an average of 14 emails per day—is not objectively a large number. Even if that pattern continued for a longer period of time, as Qamar claims in his opposition brief [dkt. 22 at 6], that conduct alone does not plausibly suggest severe or pervasive harassment on the basis of Qamar's national origin. There are no facts in Qamar's complaint about how the content of the emails was harassing, nor has he alleged how the emails were tied to his national origin. *Huri*, 804 F.3d at 834 (explaining that the plaintiff must allege that "the harassment was based on h[is] national origin").

The calculus could be different if Qamar alleged that the emails berated him due to his Pakistani origin, used epithets, or something similar. But even with reasonable inferences drawn in Qamar's favor, the most he alleges is that he received the emails at odd hours with the intent of harassing him. At bottom, there is no support from Qamar's well-pled allegations that Defendants subjected him to a hostile work environment based on his national origin.[10]

### D.    Breach of Contract

Qamar alleges that the same conduct by Defendants violated multiple provisions of the collective bargaining agreement (the GSU-UPI Agreement) between himself and GSU. [Dkt. 4 at 8–9.] "Federal labor law mandates that employees seeking to sue for breach of a collective bargaining agreement must first exhaust the grievance/arbitration procedures set forth by the collective bargaining agreement." *Duerr v. Minnesota Min. & Mfg. Co.*, 101 F. Supp. 2d 1057, 1061 (N.D. Ill. 2000).

---

[9]    He includes that assertion in his opposition brief, but at the motion to dismiss stage the Court is constrained to the allegations in the complaint. [Dkt. 22 at 3.]

[10]    Qamar included more allegations aimed at substantiating his claim of a hostile work environment in his opposition brief. [*See e.g.*, dkt. 22 at 10–12.] At the motion to dismiss stage though, the Court can only consider the allegations in the complaint, and the complaint cannot be amended by briefs in opposition to a motion to dismiss. *Agnew*, 683 F.3d at 348.

Where an Illinois state law breach of contract claim "depends on an interpretation of [a] collective bargaining agreement" the claim is preempted by federal labor law. *Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 693 (2005). Because of that, "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Duerr*, 101 F. Supp. 2d at 1061.

In his complaint, Qamar explicitly references the GSU-UPI Agreement, arguing Defendants breached multiple provisions. While Qamar did not attach the document to his complaint, because it is central to his allegations, the Court may consider it in resolving Defendants' motion. *Amin Ijbara Equity Corp.*, 860 F.3d at 493 n.2.

Article 13 of the GSU-UPI Agreement outlines grievance procedures, up to and including arbitration. [Dkt 14-1 at 35.] Qamar does not allege in his complaint, or explain in his opposition brief, that he attempted to avail himself of the procedures set out in the collective bargaining agreement. Instead, he argues that exhaustion is not required when grievance procedures are obstructed or futile. [Dkt. 22 at 13.]¹¹ But nowhere in his complaint does he allege facts supporting that claim. To the contrary, as Defendants note, Qamar admitted that the Union responded to his internal complaint [dkt. 22 at 2], suggesting the process was not unavailable.

Qamar also argues that the GSU-UPI Agreement does not require that employees file a grievance in court before pursuing other remedies. That may be true, but exhaustion isn't a contractual requirement; it is a requirement under federal labor law. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983); *Gelb*, 356 Ill. App. 3d at 692. As a result, Qamar has failed to state a breach of contract claim.¹²

### E. Punitive Damages

The final issue to be resolved is Qamar's request for punitive damages "to deter future violations of the GSU-UPI Agreement." [Dkt. 4 at 10.] 42 U.S.C. § 1981a(b)(1) prohibits recovering punitive damages against "a government, government agency or political subdivision." Public universities in Illinois are considered agencies of the state. *Alexander v. Ne. Ill. Univ.*, 2007 WL 1576130, at *4 (N.D. Ill. May 29, 2007) (collecting cases); *see also Mason v. Bd. of Trs. of Univ. of Illinois*, 2010 WL 11646632,

---

¹¹ The case cite Qamar provides for this point, *Treadwell v. Illinois Dep't of Children & Family Services,* 570 F.3d 473 (7th Cir. 2009), cannot be located. The Court emphasizes again the point made in footnote 7.

¹² In passing, Qamar argues that his breach of contract claim against "GSU administrators" may proceed because they contributed to the alleged contract violations. [Dkt. 22 at 13–14.] Not so. Qamar has no claim against the individual defendants for breach of a contract entered into with the University. *See People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 78 Ill. 2d 381, 384 (1980) (discussing whether an entity was a third-party beneficiary that could sue to enforce contract).

at *2 (C.D. Ill. Mar. 22, 2010). Consequently, Qamar's request for punitive damages against GSU must be stricken.

Illinois courts also do not permit punitive damages for breach of contract claims. *Leyshon v. Diehl Controls N. Am., Inc.*, 407 Ill. App. 3d 1, 15 877 (2010) ("[P]unitive damages may not be awarded for a breach of contract, even if the breach was willful."). To the extent Qamar elects to replead his breach of contract claim after complying with the relevant exhaustion requirements outlined above, punitive damages are not available.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [Dkt. 13] is granted. All of Qamar's Title VII claims (counts I-III) are dismissed as to the individual defendants with prejudice as amendment would be futile; count III against GSU is dismissed in its entirety without prejudice for failure to state a claim; the breach of contract claim (count IV) is dismissed as to the individual defendants with prejudice as amendment would be futile and is dismissed as to GSU without prejudice. In addition, Qamar's allegations concerning (1) the reduction of his income (through credit hour reductions and mandatory summer sessions), (2) the obstruction of his access to GSU's learning management system, and (3) GSU permitting other instructors to use his course materials cannot support either Count I, his national origin discrimination claim or Count III, his hostile work environment claim, because of his failure to raise these allegations in his EEOC charge. Finally, Qamar's request for punitive damages is stricken.

Enter: 24-cv-13245
Date: May 6, 2025

_____
Lindsay C. Jenkins
United States District Judge