UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dr. Muhammed Nafees Qamar, *Plaintiff*, v. Board of Trustees of Governors State University, *Defendant*. | No. 24 CV 13245 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Muhammed Nafees Qamar sued his former employer, the Board of Trustees of Governors State University ("GSU"), along with Dr. Catherine Balthazar, Dr. Ning Lu, Dr. Cheryl Green, and Dr. Beverly Schneller for national origin discrimination, retaliation, and creation of a hostile work environment all under the Civil Rights Act of 1964 (Title VII) and for breach of contract. [Dkt. 4.][1] The court previously dismissed Qamar's Title VII claims against the individual defendants, while allowing Qamar to proceed against GSU on his discrimination and retaliation claims (Counts One and Two). [Dkt. 28 at 10.] The court dismissed Count Three, Qamar's hostile work environment claim, but did so without prejudice. [*Id.*] It also dismissed Qamar's breach of contract claim with prejudice. [*Id.*]

Qamar has filed an amended complaint, *see* dkt. 29, and GSU moves to dismiss parts of Qamar's amended complaint. [Dkt. 33.] For the reasons stated below, GSU's motion is granted.

**I. Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. The Court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up).

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

## II. Background[2]

Qamar—who is of Pakastani origin—was employed by GSU from July 2018 until August 2023 as an assistant professor of Health Informatics. [Dkt. 29 ¶¶ 1, 7.] While at GSU, he was in a tenure-track faculty position and given additional administrative responsibilities, which included serving as director of the Health Informatics Program. [*Id.* ¶ 1.]

Qamar alleges that he suffered "systematic disparate treatment" throughout his employment at the University. [*Id.* ¶ 2.] For example, Qamar requested to pursue outside employment pursuant to the collective bargaining agreement with GSU, but his request was denied. [*Id.* ¶ 15.] Meanwhile, "similarly situated white faculty members" received support for outside employment. [*Id.* ¶ 14.] Qamar filed a complaint with GSU's human resources department on that basis. [*Id.* ¶ 15.] Soon after, he was removed from his position as chair of the selection committee for the Department of Health Administration and Informatics. [*Id.* ¶¶ 28-29.] Two weeks after filing that complaint, GSU and its administrators created a hostile work environment by sending Qamar an exorbitant number of emails at odd hours over a 10-day period—over 140 emails in total. [*Id.* ¶¶ 37, 50.]

A representative from GSU's human resources department eventually responded to Qamar's complaint. [*Id.* ¶ 15.] The representative found that denying Qamar the ability to engage in outside employment violated the collective bargaining agreement. [*Id.*] Despite being notified, the Provost and President failed to intervene with respect to Qamar. [*Id.* ¶¶ 53-54.] Qamar subsequently filed a charge with the EEOC. [*Id.* ¶ 16.] The narrative section of his EEOC charge stated as follows:

> I was hired by the Respondent on or about July 1, 2018. My position is Associate Professor. In or around January 2023, I was denied outside employment whereas my non-Asian counterparts were not. Subsequently, I complained and was then subjected to micromanagement and removed from a committee.
>
> I believe that I have been discriminated against because of my race, Asian and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Dkt. 15 at 1.] After receiving his right to sue letter, Qamar filed this lawsuit against GSU along with his supervisors at the University, alleging claims of national origin discrimination, retaliation, and creation of a hostile work environment all under Title

---

[2] The facts are drawn from Qamar's *pro se* amended complaint. [Dkt. 29.] At this stage, the court assumes as true all well-pleaded allegations set forth in the complaint and construes them liberally in Qamar's favor. *See Brown v. Meisner*, 81 F.4th 706, 707 (7th Cir. 2023) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

2

VII and for breach of contract. [Dkt. 4.] In response, Defendants moved to dismiss parts of the complaint. [Dkt. 13.]

The court granted the motion. [Dkt. 28.] It first dismissed Qamar's claims against the individual defendants because Title VII does not authorize suits against supervisors in their individual capacities. [*Id.* at 3.] Next, the court dismissed Qamar's claim that GSU created a hostile work environment. It reasoned that Qamar failed to allege that his supervisors' conduct of sending emails created a hostile or abusive situation: Qamar did not allege that the content of the emails was harassing, nor did he allege how the emails were tied to his national origin. [*Id.* at 8 (citing *Hurri v. Off. of the Chief Judge of the Cir. Ct. of Cook County*, 804 F.3d 826, 834 (7th Cir. 2015).] Lastly, the court dismissed Qamar's breach of contract claim because he failed to exhaust the grievance procedures outlined in the collective bargaining agreement. [*Id.* at 9.] In the end, the court allowed Qamar to proceed on his discrimination and retaliation claims against GSU, while permitting Qamar to amend his complaint to replead his claim of hostile work environment, which he has now done. [*Id.* at 10; Dkt. 27.]

### III. Analysis

#### A. Amended Complaint and Scope of EEOC Charge

GSU requests that the court dismiss (or, more accurately, strike) portions of Qamar's discrimination claim that are not based on allegations mentioned in his EEOC charge. [Dkt. 34 at 6–7.] Specifically, GSU contends that Qamar's amended complaint, like the initial complaint, presents allegations that are outside the scope of the EEOC charge. The court largely agrees.

As previously explained, Qamar's EEOC charge included a short, two paragraph narrative describing the discrimination. [Dkt. 28 at 4.] Qamar's summary indicated that he'd been subjected to discrimination based on national origin and retaliation. [*Id.*] Specifically, he explained that he "was denied outside employment whereas [his] non-Asian counterparts were not. Subsequently, [he] complained and was then subjected to micromanagement and removed from a committee." [*Id.*] Qamar asserted that he had been discriminated against "because of his race, Asian and retaliated against for engaging in protected activity in violation of Title VII." [*Id.*]

Given his narrative, the court struck several allegations Qamar raised in his initial complaint that were not reasonably related to the allegations in his EEOC charge. They included: (1) the reduction of his income (through credit hour reductions and mandatory summer sessions), (2) the obstruction of his access to GSU's learning management system, and (3) GSU permitting other instructors to use his course materials. [*Id.* at 4–5; Dkt. 4 ¶ 21.] These allegations, the court explained, did not describe the same conduct or bear a sufficient factual relationship to Qamar's charge

3

that he was denied outside employment and later subject to micromanagement and removal from a committee. [Dkt. 28 at 10.]

The same disconnect exists between the targeted narrative in Qamar's EEOC charge and several of the new allegations in the amended complaint. The scope of available Title VII relief is limited to those claims that were included in the EEOC charge, or "that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). A claim is "reasonably related" when (1) "there is a factual relationship between the allegations in the charge and the claims in the complaint" and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (internal quotation omitted). At minimum, the charge and complaint should "describe the same conduct and implicate the same individuals." *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022).

Here, many (though not all) of the new facts do not satisfy this standard. For example, the amended complaint includes allegations that GSU:

- reduced Qamar's salary, *see* ¶¶ 14, 19, 24, 51;

- reduced or manipulated his credit-hour allocation, *see* ¶¶ 19, 22;

- denied him summer teaching assignments and professional travel opportunities, *see* ¶¶ 24, 32, 51; and

- changed to his office title, *see* ¶ 52.[3]

Even liberally viewed, there is not a reasonable relationship between these kinds of allegations and the factual narrative of Qamar's EEOC charge. The charge relayed that Qamar was "denied outside employment" because of his national origin and that he was subjected to "micromanagement and removed from a committee" after he raised complaints to the Provost. [Dkt. 34-1 at 2.] This does not describe the same conduct and implicate the same individuals as his allegations of reduced income, manipulated credit hour allocation or withheld summer teaching assignments. Nor did Qamar's charge that he was discriminatorily denied the opportunity to pursue outside employment indicate to the EEOC that it should investigate, for example, a salary reduction or credit-hour manipulation.

---

[3]   Qamar alleges that "additional adverse acts" occurred after he filed his EEOC charge, though he does not identify the specific acts to which he refers. [Dkt. 29, ¶ 57.] Setting aside the deficiency of this allegation, a plaintiff need not file a new EEOC charge alleging post-charge retaliation by the employer. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 857 n.11 (7th Cir. 2019) (noting that the Seventh Circuit has "long held that a plaintiff need not file a new charge alleging post-charge retaliation by the employer").

4

Conversely, allegations that Qamar was subject to "disparity in treatment" as compared to non-South Asian faculty members who were permitted committee appointments and supplemental employment opportunities, does bear a reasonable relationship to the factual narrative of the EEOC charge. [Dkt. 29, ¶ 21.]

Qamar resists this conclusion, arguing that the additional allegations are "tethered to the same discriminatory course of conduct already reported to the EEOC" and are meant to enhance his discrimination claim. [Dkt. 42 at 8.] But as already explained, "an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Regardless of any effort to "enhance" his existing claims of discrimination and retaliation, any new allegations still must be reasonably related to his charge.

It is not possible for the court to parse each allegation of the amended complaint. Suffice it to say that allegations reasonably related to the charge that Qamar was denied outside employment when his non-Asian counterparts were not, resulting in micromanagement and committee removal, as well as claims reasonably expected to grow out of an EEOC investigation of that charge, may proceed. To the extent new allegations do not satisfy this standard, they may not be pursued in this lawsuit.

### B. Hostile Work Environment

The court previously dismissed without prejudice Qamar's hostile work environment claim because he did not allege any conduct that plausibly suggested severe or pervasive harassment based on national origin. [Dkt. 28 at 8.] GSU says that Qamar's amended complaint fares no better, contending that Qamar failed to allege that any action he faced was severe or pervasive or was related to his national origin. [Dkt. 34 at 8–9.]

To state a claim for hostile work environment, Qamar must allege that he was harassed based on a protected characteristic, the harassment was severe or pervasive, it created a hostile or abusive working environment, and the employer could be liable. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015) (citation omitted). "[C]ourts consider the totality of the circumstance" when determining whether the plaintiff has pled severe or pervasive conduct. *Dodgen v. AARP*, 2022 WL 4607926, at *4 (N.D. Ill. Sept. 30, 2022). Relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation and internal quotation marks omitted).

Here, Qamar alleges several instances where he experienced "institutional bias." He says that his supervisors (1) made "demeaning statements" asserting

5

superiority over him; (2) stated "we own you"; (3) fostered a coercive workplace; (4) misrepresented his contributions to the Health Informatics program; and (5) treated white colleagues more favorably. [Dkt. 29 ¶ 47.] None of his well-pleaded factual allegations suggest that GSU harassed him *because of* his national origin, so he has not alleged a hostile work environment that Title VII prohibits. *See Huri*, 804 F.3d at 833. Unpleasant or harassing behavior not based on a protected characteristic does not violate Title VII. *See, e.g.*, *Smith v. Illinois Dep't of Transportation*, 936 F.3d 554, 560-561 (7th Cir. 2019) ("Title VII imposes no 'general civility code,'" and comments that "may have made for a crude or unpleasant workplace" are not actionable unless they are connected to a protected class.") Though the allegations surely describe a less than ideal work environment, even liberally construed, none of the conduct alleges harassment based on any reason forbidden by Title VII.

Nor do the allegations rise to the level of "severe" and "pervasive" conduct sufficient to create a hostile work environment. Even though "a workplace need not be 'hellish' to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are so altered." *White v. Fidelity Brokerage Servs., LLC*, 2019 WL 6052398, at *4 (N.D. Ill. Nov. 15, 2019) (quoting *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017)). Liberally construing the amended complaint, Qamar alleges, at best, that he was treated unfairly after he filed a complaint against the Provost. These allegations may support a claim for retaliation, as the court previously acknowledged [dkt. 28 at 8], but they do not plausibly suggest hostile work environment based on a protected characteristic. Indeed, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation because the complaining employee belongs to a racial minority." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022) (citation omitted).

Consequently, the court dismisses Qamar's hostile work environment claim. Because the court provided Qamar with the opportunity to cure his pleading deficiencies and he failed to do so, the dismissal is with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015).

## IV. Conclusion

For the reasons stated above, GSU's motion to dismiss [dkt. 33] is largely granted. The court dismisses with prejudice Qamar's hostile work environment claim. Qamar's amended complaint as to discrimination and retaliation may stand to the extent discussed above.

Enter: 24-cv-13245
Date: August 20, 2025

_____
Lindsay C. Jenkins

6